**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

**CASE NO. 25-14334-CIV-MARTINEZ/MAYNARD**

DAWSON HANCHEY,

      Plaintiff,

v.

BLEW BAYOU SERVICES, LLC,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before me upon Plaintiff's Renewed Motion for Entry of Final Default Judgment ("Motion"). DE 15. No response in opposition has been filed. U.S. District Judge Jose E. Martinez has referred this Motion to me for appropriate disposition. DE 17. Having reviewed the Motion, the record, and the governing law, I respectfully **RECOMMEND** that (1) the Motion be **DENIED WITHOUT PREJUDICE**, (2) the Clerk's default be **VACATED**, (3) Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**, and (4) Plaintiff be required to file and serve an amended complaint before seeking default judgment.

**BACKGROUND**

Plaintiff filed this action on September 11, 2025, asserting four claims against Defendant: disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") (Counts I and II), and parallel claims under the Florida Civil Rights Act ("FCRA") (Counts III and IV). DE 1.

The Complaint alleges that venue is proper in this District because the events giving rise to Plaintiff's claims occurred in Martin County, Florida. *Id.* ¶ 3. In the section identifying the parties, Plaintiff states that he "is a resident of Wauchula County, Florida, and he worked in Hardee County." *Id.* ¶ 4. Plaintiff further alleges that Defendant "operates a store in Stuart, in Martin County, Florida." *Id.* ¶¶ 4-5. No further details about the parties are provided in this section.

According to the Complaint, Plaintiff began working for Defendant as an apprentice lineman on September 5, 2023. *Id.* ¶ 11. Plaintiff alleges he is a qualified individual with a disability based on multiple medical conditions, including rhinovirus, pneumonia, RSV,[1] Still's disease, and myocarditis. *Id.* ¶¶ 13-14.

Plaintiff alleges that on November 1, 2023, which was approximately two months into his employment, he was working "for Defendant in Georgia" when he informed his supervisor that he was feeling ill. *Id.* ¶ 15. He sought medical care at a hospital on November 3, 2023, and was diagnosed on November 8, 2023, with rhinovirus, pneumonia, and RSV. *Id.* ¶¶ 16-17. He later received additional diagnoses of Still's disease and myocarditis. *Id.* ¶ 18.

On November 9, 2023, Plaintiff allegedly informed Defendant's owner that he was hospitalized due to a heart condition. *Id.* ¶ 19. On November 11, 2023, the owner texted Plaintiff requesting a status update; Plaintiff reported that he remained hospitalized, and the owner encouraged Plaintiff to feel better. *Id.* ¶¶ 20-21. The Complaint then summarily alleges that "Plaintiff required and requested a reasonable accommodation of a medical leave of absence." *Id.*

---

[1] The Complaint alleges that Plaintiff suffers from "RSV" but does not define the acronym or otherwise clarify the condition. Based on the context provided, I assume Plaintiff is referring to respiratory syncytial virus.

¶ 22.  The pleading does not specify when this request was made, to whom it was directed, or its scope or duration.

Plaintiff alleges he remained on medical leave until March 13, 2024, when he received medical clearance.  *Id.* ¶ 23.  During his leave, Plaintiff's brother-in-law, who was also employed by Defendant, allegedly provided periodic updates to Plaintiff's foreman.  *Id.* ¶ 24.

Plaintiff alleges that on March 13, 2024, he texted his foreman a photograph of his medical clearance and advised that he could return to work the following Monday.  *Id.* ¶¶ 26-27.  According to Plaintiff, later that same day, the foreman called and terminated his employment, stating that Plaintiff was "too much of a 'liability' for Defendant."  *Id.* ¶ 29.

On November 12, 2025, the Clerk entered default against Defendant for failure to appear or otherwise respond.  DE 6.  On November 14, 2025, the case was administratively closed with instructions for Defendant to respond or, failing that, for Plaintiff to "file a motion for final default judgment that includes affidavits of the amounts due by Defendant, if necessary, and any other supporting documentation necessary to determine the measure of damages and/or conclude this action."  DE 7, reiterated in DE 10.

Plaintiff has since filed three motions for default judgment.  DE 11, DE 13, DE 15.  Judge Martinez denied the first two motions without prejudice based upon procedural deficiencies, including the absence of a legally sufficient proposed order and supporting legal analysis.  DE 12, DE 14.  In his most recent order, Judge Martinez emphasized that that Plaintiff's proposed order failed to articulate the governing legal standards or provide meaningful analysis, noting that it improperly "rubber stamps the requested relief with no analysis."  DE 14 at 2.

The present Motion is Plaintiff's third attempt.  The Motion references two attached exhibits, DE 15 at 10, 12, 14, yet none are included.  I assume for present purposes that Plaintiff intends to rely on two affidavits attached to his initial motion for default judgment.[2]  The first is Plaintiff's own affidavit, which largely restates the Complaint's allegations.  DE 11-1.  Plaintiff also submits his counsel's affidavit regarding attorney's fees, although the fee figures vary across submissions: $10,085 in counsel's affidavit, DE 11-2 at 3; $10,709 in Plaintiff's affidavit, DE 11-1 at 5; and $10,000 requested in the Motion, DE 15 at 12, 14.  Apart from these affidavits, Plaintiff submits no corroborating documentation, such as medical records, medical clearance documentation, or evidence of any request for accommodation.  To date, Defendant has not appeared or responded.

### LEGAL STANDARD

Rule 55 establishes a two-step process for entry of default judgment.  First, when a defendant fails to plead or otherwise defend, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of default, the Court may enter default judgment against the defendant under Rule 55(b), provided the defendant is not an infant or incompetent person.  Fed. R. Civ. P. 55(b).

A default, however, does not entitle a plaintiff to judgment as a matter of right.  Because cases should ordinarily be resolved on their merits, "default judgments are generally disfavored." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)).  A default judgment may be entered only

---

[2] Although I have considered these affidavits for present purposes, I note that it is not the Court's role to sift through the record in search of evidentiary support for a party's motion.  Plaintiff is cautioned that future filings must include all referenced exhibits or properly incorporate them by reference with pinpoint accuracy.

where the well-pleaded allegations of the complaint establish a sufficient legal basis for liability. *Surtain*, 789 F.3d at 1245 (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  A defaulting defendant is deemed to admit well-pleaded factual allegations, but not legal conclusions or allegations that are not well-pleaded.  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (quoting *Nishimatsu*, 515 F.2d at 1206).  "[A] default judgment cannot stand on a complaint that fails to state a claim."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).  "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim."  *Surtain*, 789 F.3d at 1245.

Accordingly, courts must assess the sufficiency of the complaint before entering a default judgment.  *See U.S. v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu*, 515 F.2d at 1206).  While a complaint does not need detailed factual allegations, a plaintiff must allege more than labels, conclusions, or a formulaic recitation of elements.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Finally, if liability is established, the Court must then evaluate damages.  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  *See* Fed. R. Civ. P. 54(c).  The plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).  Damages must be supported by competent evidence, and the Court must independently determine the appropriate amount. *Id.* (citation omitted); *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of

damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44. However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

## DISCUSSION

Before addressing damages, I must first determine if the Complaint's allegations establish liability.  They do not.  The Motion is undermined at the outset by substantive and procedural deficiencies that go to the sufficiency of the Complaint itself, not merely the evidence.  Against that backdrop, below I will address (1) material inconsistencies in the Complaint, (2) liability, (3) damages, and (4) the appropriate path forward.

### 1.  Material Inconsistencies in the Complaint

As a threshold matter, the Complaint contains glaring inconsistencies regarding location and key facts.  Plaintiff alleges he resides in "Wauchula County, Florida," and worked in Hardee County, DE 1 ¶ 4, even though Wauchula is not a county, but is a city located within Hardee County. *See* Wauchula Main Website, available at https://www.cityofwauchula.gov/ (last accessed Apr. 15, 2026).  He further alleges that Defendant "operates a store" in Stuart, Martin County, Florida, and that venue is proper based on events occurring there.  *Id.* ¶¶ 3, 5.  But he later alleges that he was working in Georgia for Defendant as an "apprentice lineman" when he first became ill.  *Id.* ¶¶ 11, 15.  Beyond these bare assertions, the Complaint provides no allegations regarding

the nature of Defendant's business, Plaintiff's duties as an employee, or what happened in Stuart, Florida that would cause venue to be appropriately located in this court. This lack of clarity obscures key information about where the operative events occurred and the employment relationship at issue. It also undermines the basis for venue and the asserted Florida statutory claims.

### 2. *Liability*

#### a. **Disability Discrimination Under the ADA/FCRA (Counts I and III)**

As currently pled, Plaintiff's disability-discrimination claims fail as a matter of law. The ADA prohibits employers from discriminating against a qualified individual employee because of disability. *Surtain*, 879 F.3d at 1246 (citing 42 U.S.C. § 12112(a)). To state a disability discrimination claim under the ADA and FCRA, Plaintiff must allege facts showing that he (1) has a disability; (2) was a qualified individual for the position in question; and (3) his employer discriminated against him because of his disability. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citing *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023)); *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (noting that courts evaluate FCRA claims under the same framework as ADA claims). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA regulations define "essential functions" as "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). Whether a plaintiff can perform the essential functions of a position with or without reasonable accommodation requires a "fact-intensive inquiry." *Hardin v. Oakley Transp., Inc.*, 2025 WL 948313, at *7 (M.D. Fla. Mar. 28, 2025).

Plaintiff's disability-discrimination allegations are largely conclusory and merely trace the statutory definitions of disability.  For instance, he asserts he is a "qualified individual," but fails to provide factual support regarding job duties or functional limitations. DE 1 ¶ 13.  He alleges multiple medical conditions but provides no facts to link those conditions to an inability or ability to perform essential job functions with or without accommodation.

The Complaint also fails to plausibly allege that Defendant discriminated against Plaintiff "because of" his disability.  The allegation that Plaintiff "required and requested" a reasonable accommodation—a medical leave of absence—is unsupported by factual detail.  The Complaint does not identify when the request was made, to whom it was directed, the scope or duration of the requested accommodation, or whether any denial occurred.  Nor do the allegations plausibly support a causal connection between disability and termination beyond the conclusory assertion that Plaintiff was deemed a "liability."  This is insufficient.

### b.  Retaliation Under the ADA/FCRA (Counts II and IV)

Plaintiff's retaliation claims, as currently pled, likewise fail as a matter of law.  The ADA prohibits employers from taking adverse action against individuals because they challenge conduct prohibited by the ADA or because they file a complaint under it.  *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (citing 42 U.S.C. § 12203(a)).  To state a retaliation claim, Plaintiff must allege that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.  *Id.*  ADA and FCRA retaliation claims are analyzed under the same framework. *See Monroe v. Fla. Dep't of Corr.,* 793 F. App'x 924, 928 (11th Cir. 2019) (citing *Frazier-White*, 818 F.3d at 1258).

While a request for accommodation may constitute protected activity, it must be grounded in a good-faith, objectively reasonable belief of entitlement. *Meyer v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 592 F. App'x 786, 792 (11th Cir. 2014) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998)). A request for leave "might be a reasonable accommodation in some cases," so long as the leave request is not for an indefinite leave. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003); *Santandreu v. Miami Dade County*, 513 Fed. App'x 902, 905 (11th Cir. 2013). Additionally, a plaintiff must show that the decisionmaker was aware of the protected activity, because "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, Plaintiff's allegations fail to plausibly establish protected activity or causation. First, Plaintiff summarily asserts that he "required and requested" a medical leave of absence at some unspecified time as an accommodation. DE 1 ¶ 22. However, he does not identify the timing, content, or recipient of the alleged accommodation request. No documents are attached to the Complaint or Plaintiff's affidavit to support the existence or content of any such request. Second, Plaintiff fails to clearly connect any decisionmaker to knowledge of the request. Plaintiff describes a shifting series of communications involving multiple individuals: first to a supervisor, then to the owner, and later to a foreman, with some of these latter communications relayed through his third party brother-in-law. DE 1 ¶¶ 15, 19-20, 24, 26-29. These allegations do not support a plausible inference that any decisionmaker acted with retaliatory intent.

The allegations overall are insufficient to establish liability for disability discrimination or retaliation under the ADA or FCRA.  The deficiencies go to the core elements of each claim and preclude a finding of liability as to all counts asserted in the Complaint.

### 3. Damages

Even assuming liability, Plaintiff has not established a competent evidentiary basis for damages.

Plaintiff's back pay calculations are internally inconsistent and unsupported, including discrepancies in the relevant time period and math errors.  In his Motion, Plaintiff asserts that he earned $24 per hour for approximately 45 hours per week ($24 x 45 = $1,080), plus $12 per hour for five overtime hours per week ($12 x 5 = $60), and $150 in daily per diem for five days ($150 x 5 = $750), for a claimed weekly total of $1,890 ($1,080 + $60 + $750 = $1,890).  DE 15 at 9.  The Motion estimates 16 weeks of total backpay damages "amounting to the following: $1,890.00 x 16 weeks = $20,240.00."  *Id.*  Plaintiff's affidavit attached to a prior motion includes these same calculations.  DE 11-1 at 4.[3]

On closer review, Plaintiff's calculations are largely unsupported and flawed.  As an initial matter, other than his affidavit, Plaintiff provides no documentation supporting his claimed wages, overtime, or per diem.  More importantly, his submissions contain inconsistent calculations.  In his affidavit and Motion, Plaintiff asserts a back pay period of "roughly 16 weeks" from "around March 13, 2024 until September 2024."  *Id.*; *see also* DE 15 at 9.  However, the alleged time span from March 13, 2024 through September 1, 2024, is approximately 24 weeks.  Additionally,

---

[3] As I previously noted, the Motion refers to exhibits that are not attached and appears to rely on prior filings. The Court should not have to assemble a record from prior motions.  Plaintiff's counsel shall ensure that any future submissions are complete and self-contained.

$1,890 multiplied by 16 weeks equals $30,240—not $20,240 as stated.   These discrepancies prevent any determination of back pay with reasonable certainty.

Plaintiff's claim for $50,000 in emotional distress is similarly deficient.   This claim rests on four brief, conclusory statements in his affidavit.  DE 11-1 at 4-5.  Although a plaintiff's own testimony may, in some circumstances, support an award of compensatory damages for emotional distress, such damages must nonetheless "be proven by competent, sufficient evidence" that demonstrates articulable harm.  *Garcia v. Unit Dose Servs., LLC*, 2023 WL 6962827, at *4 (S.D. Fla. Oct. 2, 2023) *report and recommendation adopted*, 2023 WL 6958658 (S.D. Fla. Oct. 20, 2023) (citing *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1344-45 (11th Cir. 2005)).

Notably, Plaintiff's cited case of *Garcia* ultimately underscores the requirement he fails to satisfy here.  Unlike the Title VII plaintiff in *Garcia* who described her experiences at work based on a supervisor's sexual advances and harassment, Plaintiff offers only brief, generalized statements in his affidavit, with no corroboration or factual detail to tie the alleged disability-based discrimination to his alleged emotional distress.  This stands in contrast to cases where courts have awarded such damages based on more developed evidence describing the plaintiff's experiences and their tangible effects.  *See, e.g., Fountain v. Chime Sols., Inc.*, 2023 WL 12166515, at *10 (N.D. Ga. Oct. 24, 2023), *report and recommendation adopted*, 2023 WL 12166500 (N.D. Ga. Nov. 21, 2023) (awarding $50,000 in compensatory damages to a plaintiff based on her testimony at an evidentiary hearing that her employer's conduct in not reasonably accommodating her disability by allowing her to work remotely, and terminating her based on her disabilities and her protected activity, caused her significant stress and mental distress).  Accordingly, on the present record, Plaintiff has not adequately demonstrated entitlement to emotional distress damages.

Should Plaintiff continue to pursue such relief, he must provide more detailed evidentiary support or be prepared to substantiate his claims at an evidentiary hearing.

Lastly, Plaintiff's request for attorney's fees is inconsistent across filings. The Motion seeks $10,000 in attorney's fees and $624 in costs. DE 15 at 13-14. In support, counsel provides an affidavit with a differing lodestar calculation of $10,085. DE 11-2 at 3. Although the Motion acknowledges the $10,085 and indicates that this amount was reduced to $10,000, DE 15 at 14, Plaintiff's affidavit reflects a differing combined request of $10,709 for fees and costs, DE 11-1 at 5. These variations, even if relatively minor, create internal inconsistencies that render the request unclear and unsupported. On this record, there is no reliable basis to award attorneys' fees and costs as requested.

### 4. *Appropriate Outcome*

Given the above defects, I conclude that the Motion should be denied. The deficiencies are fundamentally pleading-based and cannot be cured through a fourth motion for default judgment or additional evidence. *See Nelson v. Atlas Apartment Homes, LLC,* 2020 WL 10456792, at *2 (M.D. Fla. Dec. 28, 2020) (in the default judgment context, a party "may not rely on (nor may the Court consider) other evidence or argument outside the complaint and attachments thereto in determining whether the plaintiff has adequately stated a claim for which relief may be granted"); *CHCC Co. LLC v. Pilgrim Pipeline Holdings, LLC*, 2017 WL 4216464, at *5 (M.D. Fla. Sept. 22, 2017) ("Plaintiff cannot cure a deficiency in its Complaint through its Motion for Default Judgment."). The existing Clerk's default and the present default judgment proceedings rest on a Complaint that does not state a plausible claim. Under these circumstances, maintaining the default does not serve the interests of orderly procedure. At the same time, a *sua sponte*

dismissal for failure to state a claim without notice and an opportunity to amend would be improper where amendment may not be futile. *See Surtain*, 789 F.3d at 1248 (11th Cir. 2015) (a district court abuses its discretion when it dismisses an action *sua sponte* without providing the plaintiff with notice of its intent to dismiss or an opportunity to respond unless amendment would be futile or the complaint is patently frivolous).

Accordingly, the appropriate course is to deny the Motion without prejudice, vacate the Clerk's default, dismiss Plaintiff's complaint without prejudice, and permit Plaintiff the opportunity to file an amended complaint to cure the deficiencies before any renewed request for default judgment.

## CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that:

1.  Plaintiff's Renewed Motion for Final Default Judgment, DE 15, be **DENIED WITHOUT PREJUDICE**;

2.  The Clerk's Default entered on November 12, 2025, DE 6, be **VACATED**;

3.  Plaintiff's Complaint, DE 1, be **DISMISSED WITHOUT PREJUDICE**;

4.  Plaintiff be directed to file and properly serve an amended complaint within a specified time that cures the deficiencies identified in this Report; and

5.  Plaintiff be permitted to renew any motion for default judgment only after curing pleading deficiencies and satisfying procedural requirements.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with presiding U.S.

District Judge Jose E. Martinez.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 17th day of April, 2026.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE